**ANONYMOUS, Appellant,**

v.

**Henry A. KISSINGER, Secretary, United States Department of State, et al.**

**No. 73–1141.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 24, 1974.

Decided July 5, 1974.

John E. Vanderstar, Washington, D. C., with whom Richard L. Dashefsky and Ralph J. Temple, Washington, D. C., were on the brief for appellant.

N. Richard Janis, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, John A. Terry and Ellen Lee Park, Asst. U. S. Attys., were on the brief for appellees. Earl J. Silbert, U. S. Atty., also entered an appearance for appellees.

Warren E. Magee, Washington, D. C., filed a brief on behalf of the American Psychiatric Association as amicus curiae.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and MacKINNON, Circuit Judges.

FAHY, Senior Circuit Judge:

This appeal is from a judgment of the District Court in a proceeding in which appellant unsuccessfully challenged the lawfulness of his dismissal as a temporary employee in a sensitive position in the Peace Corps, an agency in the Department of State.[1]

Appellant moved for summary judgment, accompanying his motion with an affidavit of his own and another of his counsel.[2] Appellees answered appellant's Amended and Supplemental Complaint (the complaint) and also moved for summary judgment and to strike the affidavits.[3] The motions of appellees were granted by the order on appeal.

I.

The following facts appear to the court to have been undisputed when the motions for summary judgment were decided. Appellant's appointment in November, 1968, was designated as an "Emergency Appointment to Sensitive Position Pending Completion of Full Field Investigation."[4] His performance on the job was entirely satisfactory and his loyalty was not questioned. As part of a routine security investigation he had filled out Standard Form 86 when he had applied for employment. Question No. 19 on this form read:

Have you ever had a nervous breakdown or have you ever had medical treatment for a mental condition?

He answered, "No." Although he had never had a serious mental illness or nervous breakdown, he told those conducting the investigation that he had on two occasions consulted psychiatrists briefly with minor complaints related to anxiety.[5] On February 5, 1969, the security investigators subjected him to a humiliating and degrading interrogation dealing principally with his sex life. During this interrogation the investigators seemed to imply that appellant was maladjusted sexually based on his admission to them that he had two isolated homosexual experiences in early adolescence and that he and his wife had lived

1. Appellant was permitted to proceed without identifying himself on the public record. The record filed on this appeal remains under seal.

2. We do not consider that the action of the District Court prior to the filing of the Amended and Supplemental Complaint is before us in deciding the appeal, which is "from the order granting defendants' [appellees'] motions (1) to strike affidavits filed by the plaintiff in support of plaintiff's motion for summary judgment and (2) for summary judgment, and denying plaintiff's motion for summary judgment, entered in this section on the 30th day of October, 1972."

Appellant's motion was not only for summary judgment, but alternatively, if the court should find that there was a genuine issue as to any material fact, for an *in camera*

hearing or remand to the Board of the Foreign Service, or other appropriate agency, for an *in camera* hearing on such issue or issues.

3. Each party also filed a statement of their version of the undisputed facts, appellees' being designated as pursuant to Local Rule 9(h).

4. The position held by appellant was classified as sensitive pursuant to section 3(a) of Executive Order 10450, 3 C.F.R. § 936 (1949–1953 Comp.).

5. The first occasion was in the spring of 1967. His second consultation was at some time between September 23, 1968, when he executed Standard Form 86, and February 5, 1969, when he was interrogated by the security investigators.

together from time to time before they were married.

About a month later the agency directed him to report to Dr. Francis Barnes, a private physician and the Peace Corps' Senior Consultant in Psychiatry. Upon advice of counsel he refused to do so. He also rescinded a release he had previously signed during the interrogation agreeing to make available to the agency confidential medical information. He offered through counsel to have the doctors he had consulted submit written reports about him for the Government psychiatrist to review. The agency rejected this offer, as well as a subsequent offer by appellant to meet with the Government psychiatrist, accompanied by his counsel and his own psychiatrist. The agency, however, insisted upon an examination by a psychiatrist selected or employed by the Government and upon access to all appellant's medical records in the possession of his psychiatrists. Appellant, deeming this an unwarranted invasion of his privacy, refused. During this period his

attorney at the time stated in a letter of March 21, 1969, to the General Counsel of the agency, that an attorney in the office of the General Counsel said to appellant's attorney that the agency was considering dismissing appellant because of "alleged homosexuality—or, in the alternative, his private sexual relations with his financee." [6]

During this month of March, 1969, appellant was advised by the agency that he would be dismissed if he did not release his medical records and submit to questioning by a Government psychiatrist. Thereupon, on March 26, 1969, appellant filed his original Complaint in the District Court seeking to enjoin such action and for related relief. No injunctive relief preventing, the agency notified appellant he was to be dismissed as of April 15, 1969, because of his "refusal to cooperate" in the Peace Corps' efforts to resolve its doubts regarding his suitability for continued employment. See letter from Ruth L. Olson, Director of Personnel, to appellant.[7]

---

6. The General Counsel in reply to the letter of March 21 states that the attorney in his office referred to denies such a statement was made.

7. This letter, dated March 28, 1969, reads:

Personal
[Address]
Dear [appellant]:
I am writing to advise you that your Peace Corps Foreign Service Reserve appointment will be terminated as of close of business April 15, 1969, for reasons set forth below, which have been explained to you and to your counsel, Monroe Freedman, Esq. Although under pertinent law and regulation no reasons need be provided for the separation of a Foreign Service Reserve Officer appointee, we shall do so in this case in order to correct the allegations regarding our grounds for your separation found in your complaint recently filed in the United States District Court for the District of Columbia.

The emotional stability of employees who are to hold sensitive positions is of great interest to the Government as an employer. This is indicated by question 19 on the Standard Form 86 ("Security Investigation Data for Sensitive Position") which you signed and thereby certified as being correct on September 23, 1968. That

question is "Have you ever had a nervous breakdown or have you ever had medical treatment for a mental condition?" It is our belief, based on information you have provided, that your negative response was, at the very least, less than candid with respect to a fact material to your suitability for employment.

The information you have provided regarding your past and present psychiatric treatment necessarily raises a question as to your suitability for the non-critical sensitive position in which you are employed. It is our obligation to resolve any doubts regarding the suitability for continued employment of Peace Corps personnel and we are unable to do so in your case because of *your refusal to cooperate in this effort.* Specifically, you have refused to authorize the release of information concerning medical treatment you have received in the past, and to discuss this issue with our own medical personnel. The duties of your position are such that their performance by an emotionally unstable employee would threaten a serious adverse effect on the efficiency of the service. (Emphasis added.)

Sincerely,
Ruth Olsen
Director, Office of Personnel

## II

The ruling of the District Court as to the reasonableness of appellant's dismissal assumes that his refusal to cooperate as requested was the actual reason for his dismissal. In so deciding the District Court disregarded the stricken affidavits of appellant and his former counsel, deeming the court to be bound by the administrative record as presented by the agency.[8] Nevertheless, we think the record before the District Court on the motions for summary judgment justified the assumption we attribute to the District Court.

The complaint alleges that the letter from the Director of Personnel to appellant, note 7, *supra*, "falsely states that Plaintiff was discharged because of his 'refusal to cooperate'" in the security investigation and that appellees had no just and proper cause to discharge him, the reason given being a subterfuge. The complaint did not assert any other basis for the dismissal. Appellant's only allegations were to the effect that the facts demonstrated that he did cooperate to the extent that could be required consistently with his right of privacy. Moreover, in his affidavit accompanying his motion for summary judgment appellant alleges only that it was unfair and untrue to characterize him as uncooperative.[9]

When his complaint was prepared and filed the record which had been presented to the District Court by the agency[10] contained the letter of appellant's former counsel of March 21, 1969, to the General Counsel of the Peace Corps, asserting that "Mr. Grove," who was in the office of the General Counsel, "stated unequivocally that the reason for [appellant's] pending discharge was alleged homosexuality—or, in the alternative, his private sexual relations with his fiancee." The record also contained the General Counsel's response of March 25, 1969, stating, "First, Mr. Grove has assured me that at no time did he state to you 'unequivocally that the reason for [appellant's] pending discharge was alleged homosexuality—or in the alternative, his private sexual relations with his fiancee.' . . . Although Mr. Grove may have indicated that a question had been raised as to [appellant's] sexual behavior, he did not state that that behavior would form the basis for any administrative action concerning [appellant]." The letter also stated:

I would like once again to make the point that I made when we met on March 20 and at the beginning of this letter. The Peace Corps has no wish to discharge [appellant]. On the contrary, we have every hope that, with his assistance, the question which has arisen concerning his suitability can be resolved satisfactorily and his employment can be continued. It was because of our desire to be fair to

---

8. The cases cited to us in support of the position of appellees respecting this limitation upon the District Court differ from the present case. In those cases the administrative records incorporated hearings at which the factual issues had been developed. No hearing was either required or held at the administrative level in appellant's case. Appellant challenged in the District Court the official reason given in the administrative record for his dismissal, and contends that he cannot be precluded from a resolution of that challenge by an administrative record which omits the basis for the challenge and, on the contrary, supports only the agency-assigned reason. We do not pursue this problem further for the reason, now explained in the body of our opinion, that the record before the District Court covered the relevant substance of the stricken affidavits,

that is, the alleged sexual motivation for the discharge.

9. In the stricken affidavit he added:
   I acknowledge that I have attempted to retain some degree of privacy for my deepest and most personal beliefs and attitudes, but I do not think any individual should be required to surrender his privacy to a nameless and faceless investigator. Despite my strong feelings on this subject, I offered through counsel to have the doctors I had seen write reports on me to the Government psychiatrist to be reviewed by him. . . . It seems strange, to say the least, that in view of this it is I who should be characterized as uncooperative.

10. The record accompanied the Peace Corps' motion to dismiss the original complaint.

[appellant] and, if possible, to retain his services, that an explanation of our concern was offered rather than merely terminating his appointment without explanation.

With the foregoing correspondence a part of the record, the complaint nevertheless proceeded solely upon the theory that appellant's dismissal for "refus-[ing] to cooperate" lacked support. The stricken affidavit of appellant's former counsel, though under oath of course, adds nothing to the relevant factual situation which was in the record before the court. It merely repeats what is reflected in the correspondence above outlined.[11]

■ Since the complaint itself places no reliance upon the sexual conduct of appellant as the basis for his dismissal, although the data with respect to that possibility was in the record filed by appellees, there was no necessity for the District Court to consider whether such conduct influenced the agency's decision to discharge appellant.[12] Appellant's refusal to cooperate was well supported as the basis upon which the agency stated its reason for the dismissal. In addition to the sequence of events which immediately preceded the dismissal, namely, the explicit warning, and the forewarned dismissal three weeks later, the concluding paragraph of the General Counsel's letter of March 25, 1969, expressed the hope that the question of "suitability can be resolved satisfactorily and his employment can be continued."

Moreover, the letter of Ms. Olson accompanying the dismissal action states its purpose to be "to correct the allegations regarding our grounds for your separation found in your [original] complaint recently filed . . .," namely, that he would be dismissed unless he waived his constitutional rights by consenting to further interrogation and by waiving his physician-patient privilege. The Olson letter carefully sought to justify the need for further information by explaining:

> It is our obligation to resolve any doubts regarding the suitability for continued employment of Peace Corps personnel and we are unable to do so in your case because of your refusal to cooperate in this effort. . . .

The most that can be said for the sexual aspect of the matter, in the limited scope of appellant's challenge to his dismissal, is that it bore upon the agency's reason for desiring further cooperation with respect to appellant's psychiatric examination, rather than constituting a reason for his dismissal. As to the latter, we think no genuine issue of material fact barred summary judgment for appellees under the law applicable to the position, to which we now turn.

11. The affidavit avers:

\* \* \* \* \*

3. . . . I telephoned David Grove, Esq., an attorney in the office of the General Counsel of the Peace Corps. He stated that the agency was considering dismissing [appellant] because of alleged sexual conduct, although Mr. Grove mentioned both homosexual and heterosexual conduct. In a letter to me dated March 25, 1969, signed by the General Counsel of the Peace Corps, it is stated that Mr. Grove did not say this. I am completely clear, however, that he did. . . .

12. We so decide notwithstanding the District Court's statement in its Memorandum accompanying its Order, "The plaintiff in this case attempts to obscure the real issue in this case when he claims that his discharge was motivated by sexual conduct," for the court thereupon proceeds to state that the real question before the court is,

> whether a conditional appointee to a sensitive position with the United States Government who has falsely answered a question on a security questionaire may refuse to permit the Government access to relevant medical information and to submit to an interview (for nontreatment purposes) with a consulting physician and still retain his job.

\* \* \* \* \*

. . . Under the particular facts of this case, the court holds that the agency requests were reasonable and relevant to plaintiff's suitability for holding a sensitive position and that his discharge for refusal to cooperate was reasonable as well. . . .

## III

It appears that the only protection his position afforded him is to be found in the Constitution, since neither statute [13] nor regulation [14] helps him. This contrasts with the situation recently considered by the Supreme Court in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). In the course of the several opinions in that case it is pointed out that one in a temporary position —or pending completion of investigation —is protected only by due process of law from patently arbitrary or discriminatory dismissal. He has that much protection because of the property interest incident to his position, even though it is of a probationary or non-tenured character. Thus, Mr. Justice White stated that while Congress may limit the total discretion of the Executive in dismissing an employee by providing, for example, that it must be for cause, and thus entitle the employee to a hearing, where the Executive's discretion is not so limited a hearing is not required. Arnett v. Kennedy, *supra*, 416 U.S. at 181, 94 S.Ct. 1633. The Court so held in Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S.

Ct. 1743, 6 L.Ed.2d 1230 (1961). Nevertheless, "constitutional protection *does* extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory." Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 219, 97 L.Ed. 216 (1952); *accord,* Arnett v. Kennedy, *supra,* 416 U.S. at 183, 94 S.Ct. 1633 (White, J., concurring in part, dissenting in part); Slochower v. Board of Education, 350 U.S. 551, 556, 76 S.Ct. 637, 100 L.Ed. 692 (1956).

The question is whether the reason assigned by the agency for appellant's dismissal—the "refusal to cooperate"—was patently arbitrary. We think not. Undisputed facts furnished a reasonable basis for the agency to explore further the emotional stability of appellant for the sensitive position involved. In so viewing the matter, however, we do not decide that appellant was not qualified for continued employment. Our holding is quite limited: it is simply that the agency was within its rights to inquire further with respect to his emotional stability as an element of his qualifications for the sensitive position. We do not say that appellant's answer to ques-

---

13. Appellant's status is controlled by 22 U. S.C. § 1008 which provides:

Notwithstanding the provisions of this or any other law, the Secretary may, under such regulations as he may prescribe, terminate at any time the services of any Reserve officer or staff officer or employee serving under limited appointment, except that, if the termination is because of misconduct, the provisions of section 1007 of this title shall be applicable.

At no time did appellant, before the agency or in the District Court, advance the right to a hearing or other proceedings on the theory he was being charged with misconduct within the meaning of 22 U.S.C. § 1007. No suggestion to that effect was made in appellant's main or reply briefs in this court. It was mentioned during oral argument. In this situation we do not reach or decide the case on the theory of misconduct, and thus 22 U.S.C. § 1007 does not apply. 22 U.S.C. § 1007 provides:

(a) The Secretary may, under such regulations as he may prescribe, separate from the Service any Foreign Service officer, Reserve officer, or staff officer or em-

ployee, on account of the unsatisfactory performance of his duties, or for such other cause as will promote the efficiency of the Service, with reasons given in writing, but no such officer or employee shall be so separated until he shall have been granted a hearing by the Board of the Foreign Service and the unsatisfactory performance of his duties, or other cause for separation, shall have been established at such hearing, unless he shall have waived in writing his right to a hearing. The provisions of this section shall not apply to Foreign Service officers of class 8 or any other officer or employee of the Service who is in a probationary status or whose appointment is limited or temporary, except when separation is by reason of misconduct. . . .

14. Section 763.1 of the Foreign Affairs Manual is as follows:

Except when the separation is by reason of misconduct . . . a staff officer or employee serving under a temporary or limited appointment may be separated at any time by a notice in writing.

tion 19 on Standard Form 86 was false, as the District Court put it (note 12, *supra*). Whether his visit to the psychiatrist for a temporary anxiety is "medical treatment for a mental condition" is arguable, and if anything the emanations of Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), suggest it might not have served as a basis for a false statement prosecution. But his admitted resort to psychiatric counseling, even though limited, furnished reasonable ground, without infringing his constitutional right to privacy, see Gayer v. Schlesinger, 160 U.S. App.D.C. 172, 182, 490 F.2d 740, 750 (1973), for the agency to seek the requested cooperation in order to obtain additional relevant information. We agree with the ruling of the District Court "that his discharge for refusal to cooperate was reasonable. . . ." The method of inquiry proposed by the agency, moreover, was not so unreasonable as to result in a deprivation of appellant's property interest inconsistently with the Fifth Amendment. The agency would have been well advised in our opinion to have accepted one of the compromises proposed by appellant, without necessarily binding itself to its result, but our disagreement with the agency in this respect does not mount to constitutional significance.

We have been concerned about the proper judgment to be entered in this case. While the Government was entitled to summary judgment, there is at least one aspect in which the judgment entered by the District Court incorporates a premise of false answer which we do not think should be established as a court's determination, and to avoid all possible questions about conclusiveness and finality, we think it appropriate in the interest of justice, 28 U.S.C. § 2106, to vacate the judgment and remand so that the court may re-enter a judgment on a basis which does not rest in part on a finding that appellant's answer was false.[15]

It is so ordered.

MacKINNON, Circuit Judge (concurring in part and dissenting in part):

I concur in much of the foregoing opinion but would not go so far as to suggest that the agency should have accepted one of the compromises proposed by appellant. To my mind he was poorly advised by his counsel to refuse the request of the agency for an examination by the Peace Corps' psychiatrist and for available medical data. When he refused the request for the information, which he had a right to do, he forfeited any right he had to retain his job. The request of the agency was clearly

15. At the same time, having in mind the considerate tone of the General Counsel's letter of March 25, 1969, the parties could be given an opportunity to explore whether there still remains a possibility of disposition of the subject matter of this suit without even the stigma of a determination of a refusal on plaintiff's part to cooperate, for we discern the possibility that the plaintiff's actions may have reflected the strong legal position of his counsel, as to the ambit of his constitutional right of privacy, a point that this court finds is not without difficulty; and that the Government's course may have reflected, in part, (a) an attitude toward plaintiff's counsel, a possibility suggested by the denial of the accuracy of the assertions in the correspondence of plaintiff's counsel concerning statements by Government counsel (see fn. 11 and text thereto), or (b) an assumption that plaintiff's procedural proposals were unreasonable. Even if it should develop that the matter cannot now be resolved by agreement as to procedure, or by plaintiff's acquiescence in the procedure which may be adhered to by the Government, the plaintiff may be able to propose an acceptable method of clarifying the administrative record to avoid the inference that he was being contemptuous. We presume that at the very least the Government would agree to update his administrative record to reflect the course of this litigation, including our opinion, and it may be possible for the parties and the District Court to fashion some additional step in the interest of justice.

within its power and the circumstances required it to request such additional investigation and information. His answer to the question was sufficiently false to warrant further investigation. That it might not justify a conviction for perjury under Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L. Ed.2d 568 (1973), is beside the point. This is not a perjury case. It is not even a criminal case. It is merely an effort by an agency of the United States to carry out its duty and obligation to staff its positions with competent, reliable people. I would affirm the judgment of the trial court.