Brian Paul **CHESNA**, Petitioner,

v.

**UNITED STATES DEPARTMENT OF DEFENSE**, Respondent.

Civ. No. 3:93–823 (JAC).

United States District Court, D. Connecticut.

March 24, 1994.

Stephen M. Reck, O'Brien, Shafner, Stuart, Kelly & Morris, P.C., Groton, CT, for petitioner.

John B. Hughes, Asst. U.S. Atty., New Haven, CT, for respondent.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Chief Judge:

The petitioner in this action, Brian Paul Chesna, challenges on constitutional grounds the revocation of his security clearance by the United States Department of Defense ("Department"). Pending before the court are cross-motions for summary judgment.[1]

### BACKGROUND

The petitioner—employed as a sheet metal worker by the General Dynamics Corporation, Electric Boat Division ("Electric Boat"), in Groton, Connecticut—holds a security clearance issued by Department. The Directorate for Industrial Security Clearance Review, a unit within the Department, determined on October 21, 1991 that Chesna's security clearance should be revoked. Chesna sought review of that decision, and, in accordance with his request, a hearing on the revocation was held before Administrative Judge ("AJ") Elizabeth Matchinski on June 25, 1992. The AJ issued a ruling on August 26, 1992, upholding the decision to revoke the security clearance. On March 26, 1993, the Department's Appeal Board affirmed the AJ's decision.

Having exhausting his administrative remedies, Chesna commenced this action on April 19, 1993 by filing a Petition for Review of the Department's decision and an application for a temporary restraining order. After a hearing on the record by telephone on April 26, 1993, the court entered an order restraining the Department from taking any steps to implement the revocation of Chesna's security clearance. The court subsequently dissolved the temporary restraining order, based on the Department's representation that it would maintain the status quo pending the court's resolution of an anticipated motion to dismiss.

The Department did in fact move to dismiss the Petition, and on May 18, 1993, the court granted the Department's motion to dismiss, but permitted the petitioner to replead his constitutional claims. The court concluded that for a petition of this sort to withstand a motion to dismiss, it must state a "colorable constitutional claim"—*i.e.*, "any claim other than one that 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or one that is 'wholly insubstantial and frivolous.'" *See Chesna v. United States Department of Defense*, 822 F.Supp. 90, 97 (D.Conn.1993) ("*Chesna I*") (quoting *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), and citing *Spencer v. Casavilla*, 903 F.2d 171, 173 (2d Cir.1990)).

In accordance with *Chesna I*, the petitioner filed an Amended Petition on June 1, 1993. Count One alleges that the Department invaded the petitioner's constitutional right to privacy by requiring him to release confidential medical information and to undergo extensive polygraph examinations regarding his participation in the fall of 1982 in a drug and alcohol rehabilitation program at Starlight Farms Rehabilitation Center ("Starlight Farms") in Stonington, Connecticut.

Count Two—relying on statistics which allegedly show that a disproportionate number of blue collar, hourly wage employees have their security clearances revoked—alleges that the Department unconstitutionally discriminates against such employees.

---

1. The respondent's motion is styled as a Motion to Dismiss the Amended Petition or, in the Alternative, for Summary Judgment. Inasmuch as the court will consider the affidavits and exhibits attached to the parties' memoranda, and since the petitioner has filed a motion for summary judgment as well, the court will treat the respondent's motion as a motion for summary judgment. *See* Fed.R.Civ.P. 56(c), (e).

Furthermore, Count Three alleges that the Department, in attempting to revoke the petitioner's security clearance, will deprive him of his constitutionally protected property right in his employment as well as his fundamental liberty interest in the freedom to practice his chosen profession.

Count Four alleges that the Department's current determination to revoke the petitioner's security clearance—when it had originally concluded that he was not a threat to national security—is irrational and unconstitutional in light of his exemplary work history.

Finally, in Count Five the petitioner challenges the Department's felony policy, codified at Defense Department Directive 5220.-6,[2] which authorizes the Department to deny or revoke a security clearance based on a finding that the applicant or subject engaged in conduct which would have constituted a felony offense. According to the petitioner, this policy violates the Fifth and Sixth Amendments by permitting the conclusion that he has committed a felony without a trial or even a hearing.[3]

## DISCUSSION

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn

from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (Feinberg, C.J.), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The nonmoving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

### I.

### A.

Both parties have moved for summary judgment. In support of its motion, the Department argues that the petitioner's constitutional claims are frivolous and wholly without substance. With regard to Count One, the Department maintains that the petitioner expressly consented to the release of all records and information and to any polygraph examinations, and that he simply could have refused to do so. The Department further contends that the substance of the released information was irrelevant; rather, it was the fact that the petitioner lied about this information which was critical. Finally, according to the Department, the petitioner's expecta-

---

**2.** The policy states:
When it is determined that an applicant for a security clearance, or a person holding a security clearance, has engaged in conduct which would constitute a felony under the laws of the United States, the clearance of such person shall be denied or revoked unless it is determined that there are compelling reasons to grant or continue such clearance....

**3.** Specifically, the AJ found that the petitioner's initial misrepresentations to the DIS regarding his past alcohol and drug use would have constituted a felony in violation of 18 U.S.C. § 1001, which prohibits knowingly making false statements under oath.

tion of privacy should be assessed in the context of the realities of his employment in a security-sensitive area.

With respect to Count Two, the Department argues that statistics alone do not set forth a colorable equal protection claim. The Department asserts that labor employees and management employees are not afforded different treatment but that equal treatment does not guarantee equal results. In the Department's view, the petitioner's allegations in this regard are vague, conclusory, and unsupported by any factual basis in the record.

Concerning Count Three, the Department contends that the petitioner does not have a property interest in retaining his security clearance. The Department further asserts that—while the decision to revoke the petitioner's security clearance may affect his continued employment at Electric Boat—it in no way deprived the petitioner of his profession as a sheet metal worker. Moreover, the Department argues that the petitioner was afforded an abundance of procedural due process during the previous administrative proceedings.

As to Count Four, the Department asserts that this is merely a disguised challenge to the merits of the decision to revoke the petitioner's security clearance and that such a challenge is prohibited under existing case law—including this court's Ruling of May 18, 1993. The Department also characterizes this claim as an equitable estoppel claim and notes that the Government cannot be equitably estopped from protecting classified information.

Finally, with regard to Count Five, the Department takes the position that the petitioner was provided with notice of the information which would be relied upon in making the security clearance determination, and with the standards, policies and criteria under which that information would be considered. According to the Government, the AJ adequately described the factual basis and reasoning which supported her conclusion that the petitioner's false statements under

oath would be felonious. Moreover, the Department emphasizes that the petitioner chose to base his claim before the Appeals Board on the presence of mitigating factors, rather than to challenge the determination that his conduct would have constituted a felony.

**B.**

In response, the petitioner argues that—with regard to Count One—he had no real meaningful choice other than to sign the waivers releasing medical information and consenting to polygraph examinations or else lose his job. Basically, the petitioner claims that he was coerced into releasing confidential information and that the Department invaded his fundamental right to privacy. According to the petitioner, the Department failed to use the least restrictive means to obtain the information it sought from him and has failed to enunciate a "compelling interest" which required retrieval of that information.

With respect to Count Two, the petitioner contends that the highly disproportionate numbers of hourly employees who have lost their security clearances at Electric Boat establishes a record of partiality, unfairness and discrimination and hence a violation of equal protection. The petitioner also claims that the Department's policy in this regard violates its own regulation—Defense Department Directive 5220.6(D) [4]—which requires the Department to act fairly and impartially.

Characterizing Counts Three and Four as due process claims, the petitioner argues that—in light of his exemplary work history—the decision to revoke his security clearance is irrational and absurd and that he in no way poses a threat to national security.

Finally, as to Count Five, the petitioner maintains that he has never been convicted of a felony and that he has never gone before a jury of his peers. As a result, the petitioner claims that the Department's felony policy

---

4. This regulation states, in relevant part, that all proceedings by the Department shall be "con- ducted in a fair and impartial manner."

violates the Fifth and Sixth Amendments. The petitioner also claims that he was coerced into incriminating himself.

## II.

### A.

■ In Count One, the petitioner claims that the Department invaded his right to privacy. This argument is without merit. Despite the petitioner's conclusory allegations that the Department "illegally" uncovered information regarding his participation in a drug and alcohol rehabilitation program,[5] the record clearly demonstrates that Chesna expressly consented to the release of all records and information and to any polygraph examinations.

Indeed, the undisputed evidence in this case reveals that, in all security clearance investigations, the Defense Investigative Service ("DIS") investigator reviews with the subject a Privacy Act [6] notice which sets forth the authority of the investigator, the purpose of the investigation, the routine uses made of the information obtained, and the voluntary nature of the disclosures.[7] Each subject is specifically advised that he does not have to answer any questions, that anything he says can be used against him in

further administrative or even criminal proceedings, that he has a right to consult an attorney, and that—if he chooses to proceed without a lawyer present—he has the right to stop questioning at any time, even if a waiver has been signed.[8] Furthermore, immediately prior to the commencement of any polygraph examination, the subject is again advised of his rights.[9]

In this particular case, the DIS investigator followed the Department's standard procedure, advising Chesna of his rights under the Privacy Act and emphasizing the voluntary nature of the investigation.[10] The record further demonstrates that on March 7, 1991, Chesna signed a "Alcohol and Drug Abuse Information Release and Consent to Redisclosure."[11] This consent form—which authorizes the release of "any and all records regarding [the petitioner's] treatment" at Starlight Farms in 1982—expressly states that it is "entirely voluntary," and that it may be revoked at any time except to the extent that has already been acted upon.

Moreover, the record shows that, on March 8 and March 12, 1991, Chesna signed personal statements outlining various details of his past.[12] Both of these statements contain a Privacy Act advisement and explicitly state that they are voluntarily made.

5. *See* Petitioner's Statement of Material Facts as to Which There Exists a Genuine Issue to be Tried (filed Aug. 27, 1993) (doc. #31) ¶1.

6. *See* 5 U.S.C. § 552a. While the petitioner asserts that the Department violated his right to privacy under both the Privacy Act and the Constitution, it is unclear how the Privacy Act even applies under the circumstances presented. That statute governs the conditions and procedures of the disclosure and dissemination of a federal agency's own information on an individual, and the petitioner has not persuasively shown how the statute applies to an agency's *retrieval* of information from another source. In any event, the statute expressly provides for the disclosure of any record pursuant to "the prior written consent of [ ] the individual to whom the record pertains." 5 U.S.C. § 552a(b). As we shall see, this provision is dispositive under the circumstances of this case, at least insofar as the Privacy Act is concerned.

7. *See* Declaration of Jimmy Padgett (dated June 23, 1993) ("Padgett Declaration") ¶5 and Ex. A thereto. The Padgett Declaration is attached to

the Respondent's Memorandum in Support of Motion to Dismiss Amended Petition for Review (filed June 28, 1993) (doc. #23) ("Respondent's Memorandum in Support").

8. Padgett Declaration ¶8.

9. *Id.* ¶11.

10. *See* Declaration of John C. Woehrman (dated June 24, 1993) ("Woehrman Declaration) ¶5. The Woehrman Declaration is attached to the Respondent's Memorandum in Support.

11. *See* Ex. 1 to Respondent's Memorandum in Opposition to Petitioner's Cross Motion for Summary Judgment (filed Aug. 20, 1993) (doc. #29). This consent form is also attached to the Respondent's Memorandum in Support.

12. These statements are attached to the Woehrman Declaration.

With regard to the polygraph examinations, the petitioner executed Privacy Act waivers and polygraph examination consent forms on May 22 and 23, 1991.[13] The waivers list all of the rights discussed above and confirm that these rights were explained to, and understood by, the petitioner. The waivers also state that they were voluntarily made. In addition, the polygraph consent forms contain a Privacy Act advisement and make clear that the petitioner was told that no adverse action could be taken against him based solely his refusal to undergo a polygraph examination. Again, the forms emphasize that they were voluntarily executed. Finally, the record reveals that the petitioner executed three additional personal statements on May 22, 1991, which, like the previous statements, contain Privacy Act advisements and certify that they were voluntarily made.[14]

In face of all this evidence, the petitioner has testified merely that he knew that if he did not sign the releases and waivers, he would lose his security clearance and hence his job at Electric Boat.[15] He knew this, he claims, "[f]rom people that I know and also from the general talk around the Shipyard...."[16] He therefore asserts that he "had no choice but to take the lie detector test or to face a loss of employment."[17]

Chesna has nowhere claimed, however, that he was actually threatened with the loss of employment if he refused to release the desired information or to undergo a polygraph examination. He has also not suggested, much less testified, that he was ever explicitly ordered against his will to waive his rights. Similarly, there is no evidence whatsoever on this record of any harassment or intimidation. Finally, the petitioner has never maintained that he was not advised of his rights, that he did not understand them, or that he waived them unknowingly. In short, the petitioner has not produced sufficient specific facts to establish that there is a genuine issue of material fact for trial with regard to his invasion of privacy claim. To the contrary, his opposition to the respondent's motion for summary judgment rests entirely on speculation and conjecture as to what might have happened if he had exercised the rights of which he was thoroughly and repeatedly advised.

In sum, the petitioner's vague and conclusory assertions. that he was "required" to release information regarding his drug and alcohol rehabilitation and to undergo polygraph examinations [18] find no support in the record and will not suffice to the defeat a motion for summary judgment. Put simply, the undisputed facts show that the petitioner here knowingly and voluntarily waived his

13. The Privacy Act Waivers are attached as Ex. B to the Padgett Declaration; the Polygraph Examination Statements of Consent are attached as Ex. D, E to the Padgett Declaration.

14. These statements are attached to the Padgett Declaration.

15. See Affidavit of Brian Paul Chesna (dated July 23, 1993) (doc. # 27) ("Chesna Affidavit") ¶¶ 12, 13. The Chesna Affidavit is attached as Ex. A to the Petitioner's Memorandum in Opposition to Government's Motion to Dismiss the Amended Petition and [sic] Petitioner's Cross Motion for Summary Judgment (filed July 26, 1993) (doc. # 27) ("Petitioner's Memorandum").

16. Chesna Affidavit ¶ 12.

17. *Id.* ¶ 13. The petitioner also claims that he was assured by Electric Boat that his security clearance would not be jeopardized if he participated in drug and alcohol treatment at Starlight Farms. *Id.* ¶ 8. Unfortunately for the petitioner, this fact is simply not relevant here. First, Elec-

tric Boat is not a party to this action, and has no authority to grant or review security clearances. Second, the plaintiff has provided no authority for the proposition that a promise made on behalf of Electric Boat—a private employer—is binding on the federal Government with regard to the issuance and review of security clearances. Finally, the record suggests that the Department decided to revoke the petitioner's security clearance not because he entered a drug and alcohol rehabilitation program, but because he initially lied to the Department about his past drug and alcohol use.

The petitioner further contends that Starlight Farms promised him that any information disclosed during treatment would forever remain strictly confidential. *Id.* ¶¶ 9, 10. Again, this fact is not relevant. Starlight Farms is not a party to this action, and even if it were, it is unclear how the petitioner could pursue a cause of action based on such an assurance, since he signed a release which expressly authorized the disclosure of this information to the Department.

18. *See* Petitioner's Memorandum at 8–9, 13.

right to privacy. Accordingly, the respondent's motion for summary judgment with regard to Count One must be granted.[19]

### B.

■ The petitioner next claims that the Department discriminates against blue collar, hourly wage employees of Electric Boat. To support this claim, the petitioner relies exclusively on the following statistic: as of July 26, 1993, 55% of the total employee population of Electric Boat—over 13,000—were hourly employees, while 89% of the 73 security clearance revocations that occurred between May 20, 1991 and July 26, 1993 also involved hourly employees.[20]

Under the circumstances presented here, the petitioner's equal protection claim must fail. As an initial matter, the respondent has presented ample evidence refuting the petitioner's bald claim of discrimination. Specifically, the respondent has offered evidence suggesting that when cases are referred for DIS investigation, no distinction is made as to whether the subject is an hourly wage or salaried employee, and that records are not kept concerning such a categorization.[21] The petitioner has offered nothing which actually rebuts this evidence, arguing merely that the self-serving statements of the Department's employees should not be credited. Again, the petitioner simply has not produced specific sufficient facts to raise a genuine issue of material fact on this score, and his conclusory denials regarding the respondent's credibility are insufficient.

■ Even without the evidence presented by the respondent, the petitioner's claim could not succeed. The petitioner has not cited any facially discriminatory language in any of the laws or regulations which govern the issuance or review of security clearances. Nor has the petitioner shown any evidence of discriminatory intent or purpose. As the Supreme Court has repeatedly made clear, however, disproportionate impact—standing alone—will not suffice to sustain an equal protection claim. *See, e.g., Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979) (citing "settled rule" that the Constitution "guarantees equal laws, not equal results"); *Village of Arlington Heights v. Metro. Housing Development Corp.,* 429 U.S. 252, 264–65, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (official action will not be held unconstitutional solely because it results in disproportionate impact) (*citing Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976)). In a word, "[p]roof of … discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights,* 429 U.S. at 265, 97 S.Ct. at 563.

■ Here, the petitioner has presented nothing more than one bare statistic. Yet statistical proof must present a "stark" pattern to be accepted as the sole proof of discriminatory intent under the Constitution. *See McClesky v. Kemp,* 481 U.S. 279, 293, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987) (*citing Arlington Heights,* 429 U.S. at 266, 97 S.Ct. at 564).[22] The data presented here does not even remotely imply a pattern, let

---

19. Even if the petitioner had refused to consent to the Department's investigation, and even if he lost his job as a result, it is by no means clear that he would have a viable cause of action. For example, in *Anonymous v. Kissinger,* 499 F.2d 1097, 1102–03 (D.C.Cir.1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 671 (1975), the Court of Appeals upheld the dismissal of a temporary employee in a sensitive position of the Peace Corps for refusing to cooperate in an investigation of his background. The Court held that the agency had a reasonable basis to explore further the emotional stability of the plaintiff for the sensitive position involved and that the plaintiff's refusal to cooperate constituted a supportable basis for dismissal. *See also* Part II.E., *infra.*

20. *See* Ex. B to Petitioner's Memorandum.

21. Padgett Declaration ¶ 15; Wochrman Declaration ¶ 13; Declaration of James B. Witkowski, Jr. (dated June 24, 1993) ("Witkowski Declaration") ¶¶ 8, 10. The Witkowski Declaration is attached to the Respondent's Memorandum in Support.

22. The only exceptions to this rule involve the use of statistics to show discrimination in the selection of the jury venire in a particular district and the use of multiple-regression analysis to prove statutory violations of Title VII of the Civil Rights Act. *See McClesky v. Kemp,* 481 U.S. at 293–94, 107 S.Ct. at 1767–68.

alone a "stark" pattern, of disparity.[23] Put simply, the record here is utterly devoid of any evidence suggesting a discriminatory intent or purpose. The respondent's motion for summary judgment on the petitioner's equal protection claim must therefore be granted.[24]

■ Even if there were some evidence here suggesting that the Department actually distinguished between hourly wage and salaried employees, the petitioner's equal protection claim would nonetheless fail. The petitioner has not suggested, much less persuasively demonstrated, that blue collar, hourly wage employees are a suspect, or even a quasi-suspect, class. Nor can the petitioner claim that he has a fundamental right to a security clearance. *See Department of Navy v. Egan*, 484 U.S. 518, 528, 108 S.Ct. 818, 824, 98 L.Ed.2d 918 (1988) ("[i]t should be obvious that no one has a 'right' to a security clearance").

■ Absent the use of a suspect classification or the implication of a fundamental right, a governmental classification will pass constitutional muster if it bears a rational relationship to a legitimate governmental interest. *See New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *Thomas v. Sullivan*, 922 F.2d 132, 136 (2d Cir.1990). Furthermore, the burden would be on the petitioner to show that the classification had no rational basis, and the standard of review would be an extremely deferential one. *See Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979).

■ In this regard, it is well established that the Government has a legitimate, indeed a compelling, interest in withholding national security information. *See, e.g., Department of Navy v. Egan*, 484 U.S. at 527, 108 S.Ct. at 824 (collecting cases). Moreover, the Department apparently receives "adverse information" regarding the illegal use of drugs, alcohol abuse and minor offenses (*e.g.*, driving-while-intoxicated, breach of peach, and domestic disturbance) disproportionately with respect to hourly wage employees—a fact which arguably explains the disproportionate number of revocations involving such employees.[25]

In sum, there is no evidence suggesting any classification of hourly wage employees, and even if there were, the petitioner could not successfully pursue an equal protection claim.

### C.

In Count Three, the petitioner asserts that if the Department is permitted to revoke his security clearance, it will unconstitutionally deprive him of his job and his right to practice his chosen profession. Like Counts One and Two, this claim has no merit.

■ Indeed, the petitioner has not—and cannot—claim that he has any constitutionally protected interest in a security clearance. *See Department of Navy v. Egan*, 484 U.S. at 528, 108 S.Ct. at 824. Without any cognizable property or liberty interest, the petitioner simply cannot invoke the protections of due process. *See Bd. of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972); *Dorfmont v. Brown*,

---

**23.** As noted above, in July 1993, the total employee population at Electric Boat was approximately 13,000. Meanwhile, the DIS conducts approximately 1,200 security clearance investigations at Electric Boat each year. *See* Witkowski Declaration ¶ 9. In the period from May 1991 to July 1993, however, only 73 security clearances were actually revoked. During this period, therefore, the total number of revocations reflected approximately 2% of all investigations and less than 1% of the entire employee population. Such a small data pool is certainly of questionable empirical value. The fact that 65 of these revocations involved hourly employees can therefore hardly be said to present a "stark" pattern of disparity.

**24.** The petitioner's claim under the Department's regulation requiring fair and impartial proceedings must similarly fail. *See* note 4, *supra*, and accompanying text. To reiterate, there is absolutely no evidence on this record of any unfair or partial treatment of hourly wage employees in any Department investigations or proceedings.

**25.** *See* Padgett Declaration ¶ 14; Woehrman Declaration ¶ 12; Witkowski Declaration ¶ 4 (regarding the initiation of security clearance investigations upon receipt of "adverse information"); *see also* Respondent's Memorandum in Opposition at 13.

913 F.2d 1399, 1403 (9th Cir.1990), *cert. denied,* 499 U.S. 905, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991).[26]

 Inasmuch as the petitioner has no entitlement to a security clearance, the petitioner cannot claim that he has a right to his current employment at Electric Boat. "The ability to pursue such employment stands on precisely the same footing as the security clearance itself. If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance." *Dorfmont v. Brown,* 913 F.2d at 1403.

Moreover, the petitioner has in no way been deprived of his ability to earn a living as a sheet metal worker. He has only been denied the ability to pursue employment requiring a Defense Department security appearance. *See id.*

In sum, the court finds that there is no due process violation under the circumstances presented here. Accordingly, the respondent's motion for summary judgment on Count Three must be granted.

### D.

The petitioner claims in Count Four that the Department's decision to revoke his security clearance—when it had previously decided that the he posed no threat to national security—is irrational and unconstitutional in light of his exemplary work history. This claim, however, is nothing more than a thinly veiled challenge to the merits of a security clearance determination, an issue which has already been decided to be outside the scope of this court's jurisdiction. *See Chesna I,* 822 F.Supp. at 94–95; *see also Dorfmont v. Brown,* 913 F.2d at 1401 (holding that, under *Department of Navy v. Egan, supra,* courts lack jurisdiction to review the merits of a decision to grant or revoke a security clearance).

 Put simply, it is not for this court to determine whether the Department's decision to revoke the petitioner's security clearance was irrational or incorrect; whether the petitioner poses a threat to national security; or whether his work history at Electric Boat militates in favor of continuing his security clearance. These determinations are left to the Defense Department, as a matter of law and prudence. Accordingly, the respondent's motion for summary judgment on this claim must be granted.

### E.

Finally, Count Five challenges on constitutional grounds the Department's felony policy because it permits the conclusion that the petitioner has committed a felony without trial or even a hearing. This claim is unavailing.

 First, the petitioner has failed to distinguish between a criminal conviction—which is not even remotely at issue here—and the Department's decision to revoke his security clearance. Simply put, the revocation of a security clearance is *not* a criminal sanction and therefore does not implicate the rights under the Fifth and Sixth Amendments to a fair criminal trial. Indeed, the petitioner has provided no authority, and the court is unable to find any authority, to support his claim that the Department's revocation of his security clearance must be accompanied by the safeguards afforded to a criminal defendant merely because it is based on a determination that he engaged in conduct which would have constituted a felony. Ironically, if the court adopted the petitioner's position, the Department could presumably revoke his security clearance based on finding, for example, that he lied about his background, yet it could not do so pursuant to its felony policy without a full-fledged

26. To the extent that the petitioner is asserting a procedural due process claim, there can be no doubt that the hearing before AJ Matchinski and the appeal before the Department's Appeal Board would satisfy the requirements of due process in any event. *See generally* Determina-

tion of Administrative Judge Elizabeth M. Matchinski (dated Aug. 26, 1992) ("Determination of AJ"); and Appeal Board Determination (dated Mar. 26, 1993), attached as Ex. A, B to Respondent's Memorandum in Support of Motion to

criminal prosecution.[27]

■ Furthermore, with regard to the petitioner's claim based on the Fifth Amendment privilege against self-incrimination, there is no evidence on this record suggesting that he ever actually invoked this privilege. "Ordinarily, a person must invoke the privilege in order to gain its advantage." *Nat'l Federation of Federal Employees v. Greenberg*, 983 F.2d 286, 291 (D.C.Cir.1993) (*citing, inter alia, Minnesota v. Murphy*, 465 U.S. 420, 427–29, 104 S.Ct. 1136, 1142–43, 79 L.Ed.2d 409, *reh'g denied*, 466 U.S. 945, 104 S.Ct. 1932, 80 L.Ed.2d 477 (1984)). "If a witness called to testify 'makes disclosures instead of claiming the privilege, the government has not compelled him to incriminate himself.'" *Id.* (*quoting Murphy*, 465 U.S. at 427, 104 S.Ct. at 1142, *quoting*, in turn, *Garner v. United States*, 424 U.S. 648, 654, 96 S.Ct. 1178, 1182, 47 L.Ed.2d 370 (1976)). "The reason is simple: the Fifth Amendment does not forbid the [G]overnment from asking questions and it does not forbid the [G]overnment from taking the answers. What is forbidden is *compelling* an individual to testify against himself." *Id.* (emphasis in original).

The petitioner here, however, cannot realistically maintain that he was compelled to testify against himself. In *Greenberg*, the Court of Appeals held that answers to a security questionnaire which indicated only that an employee's failure to answer any question may result in the Department being unable to complete a security reclearance

investigation—which could in turn result in a denial of a reclearance—were not compelled. "The most that can be said, therefore, is that some employees invoking the Fifth Amendment might wind up losing their security clearances while others might not." *Id.* at 292.[28]

Here, by comparison, the record indicates that the petitioner was advised that his refusal to provide certain information "may result in adjudicating officials not being able to make a determination that suitability for access to classified defense information is clearly consistent with the interest of national security." [29] In face of the persuasive authority of *Greenberg*, the petitioner merely asserts, in conclusory fashion, that he had no real choice but to testify or else lose his job. Without any specific facts to support a showing of coercion, intimidation, harassment, or compulsion, the petitioner's bald assertion will not suffice. Accordingly, the respondent's motion for summary judgment on Count Five must be granted.

## CONCLUSION

Based on the record, and for the reasons stated above, the respondent's motion for summary judgment is hereby GRANTED, and the petitioner's cross-motion for summary judgment is hereby DENIED.

Accordingly, this action is hereby DISMISSED with prejudice and without costs to

Dismiss Petition for Review (filed May 5, 1993) (doc. # 11).

27. In any event, it is worth repeating here that the petitioner was provided with an opportunity to dispute the claim that his conduct would amount to a felony. Indeed, the petitioner was afforded a full-fledged administrative hearing, where he was represented by counsel and presented witnesses on his behalf. He was also provided with an opportunity to appeal the AJ's finding that his conduct fell within the Department's felony policy. On appeal, however, he did not challenge the AJ's determination. Rather, he argued that the AJ did not properly take into account the mitigating factors which warranted continuing his security clearance. *See* Determination of AJ and Appeal Board Determination, *supra*, note 26.

28. *See also Orloff v. Willoughby*, 345 U.S. 83, 91, 73 S.Ct. 534, 539, 97 L.Ed. 842, *reh'g denied*, 345 U.S. 931, 73 S.Ct. 779, 97 L.Ed. 1360 (1953); *Gayer v. Schlesinger*, 490 F.2d 740, 754 (D.C.Cir. 1973), *amended* 494 F.2d 1135 (D.C.Cir.1974):

The Fifth Amendment privilege protects a person who invokes it from self-accusation; but when he seeks a license at the hands of an agency acting under the standard of public interest, and information substantially relevant to that standard is withheld under the privilege, as may be done, the need for information and the cooperation of the applicant with respect to it remains. The agency cannot be required to act without the information. (citations omitted). *Cf. Anonymous v. Kissinger, supra,* note 19.

29. Padgett Declaration ¶ 6.

**121**

any party. The Clerk shall CLOSE this case.

It is so ordered.